162027 Kamal Ali et al. versus the United States et al. We're here today primarily to discuss the issue of notice. In this case, the issue is that the Immigration Service fulfilled its obligation, both under its own regulations and under its compulsion of the Fifth Amendment of the United States Constitution, to provide Kamal Ali and Israel Hassan, who are applicants in a immigration case. I'm sorry, I thought your case was only about constitutional obligations. Yes, Your Honor, and certainly the constitutional obligations go beyond, it is our argument, the regulatory requirement. But even using that as a litmus test constitutionality I think is useful for this case. So your client was given notice that the agency was likely to deny this petition to make him a lawful permanent resident because he had entered into a fraudulent prior marriage. Based on information that the agency had that the first wife said she had been paid or that an offer had been made to pay her for entering into the marriage and that the marriage was not in fact a valid marriage. So if you are given that notice, what is the notice that you say your client should have been given and the failure to give that notice amounts to a violation of due process? To answer, I think, a few different questions that Your Honor just posed. The first point I want to make is that not that the alien's immigration application was denied, but Ms. Hassan, her application to have her marriage recognized for immigration purposes was what was denied, which I think is important when we're talking about what protected interest is at issue in this case. Yes, I understand from your subsequent filings that this case is not concerned directly with a removal proceeding. It is only concerned with the marriage question. That's correct, Your Honor. And with regard to the notice and what the immigration should provide and have that prejudice, Ms. Hassan and Mr. Ali, the notice that was provided was, as you stated, a summary of a two-sentence statement that Priscilla Lewis, Kamal's ex-wife, made to the Immigration Service. But when the Immigration Service provided that notice, it just gave a summary of the statement. And that summary did not contain all of the evidence that would later be relied upon at the conclusion of the I-130 adjudication that was material to both Ms. Lewis' credibility and the credibility of the rebuttal witnesses that Mr. Ali and Ms. Hassan were able to provide affidavits for. Well, are we agreed that this case is controlled by Kerry v. Dinn or Dinn v. Kerry, whichever way it goes? Absolutely not, Your Honor. And that issue was addressed head-on by the District Court with regard to the first Matthews factor. Why doesn't this subsequent Supreme Court case control this case? I think it goes back to the point I made before, Your Honor, that the petition, the application, the immigration benefit application that's at issue in this case, is an I-130 petition by a U.S. citizen to accord status to their alien spouse. Who otherwise is here impermissibly and, in fact, has committed one prior instance of fraud on the agency apart from the ultimate determination that he committed fraud in the first marriage. Well, I think you're getting to points that weren't considered by the agency in the I-130 petition. There was no discussion in adjudication. Yeah, they didn't. It's part of the record in the case. And that the BIA doesn't specify it doesn't mean that they didn't consider it. In any event, what I'm trying to get from you is why this case is not controlled by this more recent Supreme Court case. Sure. So Din, the plaintiff in that case, was an alien who was applying for a visa at a U.S. consulate. It was the wife who was a U.S. citizen who was trying to get her husband to this country. And all that the agency gave was a statutory citation as its reason for not pursuing. Here you're given a lot of factual information as well. Right. But, Your Honor, that case had to do with the alien's application abroad. And when you're applying abroad for a visa at a consulate, there's a doctrine called the Doctrine of Constitutional Non-Reviewability, which was the issue before the court in Carey v. Din. The concurring opinion by Justice Kennedy that... No, but it doesn't go off on those grounds. It goes off on the concurring opinion, which I suspect we agree, said even if there were some due process concerns, the information provided satisfies any such concerns. Sure. Under the standard that applied to that case, that's correct. There was a facial of a gentleman... So why is this case not governed by that? Well, there is no discussion in this case about consular non-reviewability. The court in Din v. Carey is very clear that the issue... No, no, the concurring opinion doesn't rely on that. It simply says... Well, I think your argument is that the concurring opinion does rely on that and that the level of process do. Even if we assume that the citizen spouse has a protected liberty interest in continued living with their non-citizen spouse, is a function and part of the reason why the non-citizen spouse is being denied. And if the non-citizen spouse who is out of the country is being denied for a visa into the country, the general rule about the government's interest in not providing a whole lot of process in that circumstance justifies very minimal process. In that case, yes. And then you say here, the reason the non-citizen spouse is being denied is not a denial of a visa to get into the country. They're being denied. If they're denied at all, it'll be because of the finding of marriage fraud, I guess, or the denial of the I-130. Right. But that leaves me with a question about this case, which is the denial of the I-130 is not going to result in the removal of this petitioner. Because the TPS status the petitioner has will keep them in the country. Am I right that in the TPS proceeding, the petitioner will be able to challenge the finding of marriage fraud regardless of the ruling on the I-130? No, Your Honor. The petitioner has no standing to challenge anything because it is the- I don't know. When the petitioner- if the I-130 is denied, is the petitioner removed? Petitioner escapes as U.S. citizen, so no. I'm sorry. There's two people filing. Right. Is the alien removed if the I-130 is denied? No. No, right, because they have TPS status. They might be subject to removal. The ground for removal will not be denial of the I-130. The ground for removal would be marriage fraud. Correct? That is correct. And at that proceeding, the alien can challenge the marriage fraud finding pursuant to the full evidentiary hearing that you seek, correct? Correct. Correct. Okay, so in that circumstance, what is the process that is being denied to the U.S. citizen spouse? Because her liberty interest is in continued living with her non-citizen spouse. But she can't be denied the right to continue living with her non-citizen spouse absent the full-blown hearing at the removal proceeding that you say she's due. So even if we assume she's due that, you'll get it. So what is the problem? Is the problem that the TPS status could be withdrawn? The problem is that TPS is a temporary benefit that's relied completely on the discretion of the executive branch to designate TPS. It can be ended at any time. If the TPS status is withdrawn after the I-130 has been denied, they would then seek to remove the defendant, right, at that point, right? Couldn't the alien at that point make the same argument you're making now? And if so, why should we decide it now? Well, that argument that would be made at that point, and actually that is going on right now because TPS has been withdrawn. TPS has been withdrawn from Kamal Ali. He no longer has TPS, and he's pursuing review of that decision. Well, not finally. There's just been a notice that they're going to withdraw because of the marriage fraud finding. Right. But he can contest that in the TPS proceeding, pursuant to a full evidentiary hearing. Correct. But in the meantime, he has no TPS. He has no work authorization that comes along with TPS. But that's not in the interest of the spouse. Her interest is that she gets to continue living with him, and she does. And then that gets to the next point, which is the petitioner cannot ever have her marriage to Kamal recognized for immigration purposes because the marriage fraud finding carries with it a statutory non-waivable lifetime ban to immigration to the United States, which is under 8 U.S.C. 1154C. So even if TPS is miraculously, if they're able to challenge the TPS finding in removed proceedings and TPS is reinstated, still, TPS is a. . . That's what I wanted to ask you. What happens if he succeeds at the TPS proceeding in showing that their evidence of marriage fraud is woefully deficient, and there is a finding that there was no marriage fraud? He may get TPS. Okay. Now, can she file an I-130 at that point on the basis of that new finding? She can, although . . . And wouldn't it have to be granted because the BIA would have presumably determined that there was no basis for finding marriage fraud? Whether the Immigration Service has or must conduct a new marriage determination when a second I-130 is filed by the same petitioner is actually a matter that is not resolved. It's at the BIA right now. Judge Selye has a recent opinion. Do you know about it? That basically said when the agency had earlier found that the marriage was valid, that issue could be reopened at the removal procedure, proceedings, and it doesn't resolve . . . This is the converse. The converse situation, but its language does not limit it to the situation. Is that the fundamental bind that you're in, that you don't know whether the converse will be true? Because it does seem a little bit of a strange situation that you could have the I-130 denied now. You could then get the TPS finding in the favor of the alien on the ground that there was no marriage fraud. They could then withdraw TPS status, and the alien could then be removed, and the citizen spouse would have no chance to challenge that. That doesn't . . . I mean, to me, just hearing it doesn't seem to make a huge amount of sense, but I don't know how to get around that problem. There's no linkage between what happens in the removal proceeding and whether that has . . . There's no precedent that applies then to the Immigration Service. And under the procedures that the Immigration Service operates on, they have complete discretion to allege marriage fraud in the first place, and then they have complete discretion to determine what is substantial and probative evidence of marriage fraud. And when the burden is shifted . . . No, but I'm saying at the moment of the removal of the alien, you could bring a procedural due process challenge on behalf of the citizen spouse to the removal at that moment, and you'd have . . . It seems like a fairly good case if you had won in the TPS proceeding on the ground that there was no marriage fraud. For the government now to say, well, the reason they can't . . . that he can't stay is because there's no I-130. And you say, well, I never got a chance to contest that. And, in fact, all the evidence is that the ground for denying the I-130 was wrong because your own agency has concluded there was no marriage fraud. So it just seems that, in a sense, we're a little bit premature on the procedural due process claim. Well, with respect to the length of time, this particular I-130 adjudication ended in 2011. This lawsuit was filed near the end of the statute of limitations to the I-130. So I think it was important for us to file this claim now and not waive the claim as to the procedural due process issues. And I'd also like to point out that the imminence of removal is not necessarily the prejudice standard that we should be applying in this case because not only does a marriage fraud finding carry with it a likelihood of removal because you are charged with inadmissibility or removability, but there is a lifetime ban to immigration, and there are also possible criminal penalties that can come along if the government chooses to pursue that. And certainly, while I don't think under this case there is adequate evidence of marriage fraud, that's the whole point, that threat, I think, prejudice is the . . . with great efficiency on this. You've reserved some time. We'd like to hear from your opponent, and then you can respond. Okay. Thank you. Good morning. I'm Terry Olala from the U.S. Attorney's Office in the District of New Hampshire on behalf of the United States. Please speak up a bit more. I'm sorry, Judge. So, Your Honor, getting to your point, because there have been so many Fourth Amendment issues here, I would relate this in a Fourth Amendment context to inevitable discovery. So, Your Honor's point that, hey, isn't he ultimately going to get a hearing when he has a withdrawal of TPS, the answer is yes. So the process that he was due will come with the TPS. But what happens if they then, you know, he's from Sudan, there's at least some reason to wonder whether they're going to continue TPS status for people from Sudan. Right. What happens to this couple if they have been adjudicated to have had no prior marriage fraud in the TPS proceeding? They've had their I-130 denied here. They then withdraw TPS status. Is there any way for the citizen spouse at that point to file a new I-130 and rely on the finding in the TPS or to have her procedural due process claimed? Because otherwise, that seems, from their perspective, if the liberty interest is to be able to continue to live with your citizen spouse, the fact that you get something down the road that may not be all that helpful and you can never contest it doesn't seem to matter much if you've got to decide it right here, right now. I mean, I think you're right, Your Honor. I don't know what the procedure would be. It does seem odd that if the I-130 would be denied and the TPS status would be withdrawn, that he nevertheless is still subject to removal. I don't have an answer for you, Your Honor. I do think it is premature to even address that issue. Perhaps there is a proceeding in immigration court where it would be inequitable. He also has other grounds. So family unity, there are numerous other arguments that he could make. And one thing that occurred to me was the TPS status is completely different. It's individual, whereas the I-130 relates to a family unity, relates to a marriage. And I think that Your Honor made a good point with respect to the diversity visa program. He was denied that because he individually provided false documentation in support of that. So I do think, Your Honor... But that's not the ground for denying the I-130. That's correct, but... So for purposes of whether the citizen spouse gets to continue living in the country with her alien spouse, that's neither here nor there from our perspective because the thing that's standing between them living together is the marriage fraud ruling. That's correct. No, they can live together regardless of the marriage fraud. Only if TPS status is not withdrawn. That's correct, but... In this country, in this country. No, then there are removal proceedings that follow after that. But even if he wins at the removal proceeding, TPS status for all persons from Sudan can be withdrawn. That's the point that the alien spouse is making. As long as TPS status exists, he has a chance to qualify for it or be denied it. Yes. But even if he qualifies for it, TPS status can then be taken away for all people from Sudan. Once that happens, he then has to leave. And the question is, what is the right of the citizen spouse at that point to continue living with her non-citizen spouse? And the thing that stands between them at that point is the granting or denial of the I-130. That's happening right here, right now. That's right. And Judge, I think that the citizen spouse does not have any rights at that point. She has rights, but I don't think there's a remedy for her. I think that if there are removal proceedings, she does not have an ability to independently argue unless there's some equitable way through immigration court that she can argue that it's unjust that ultimately in the TPS proceedings, it was deemed that the denial of the I-130 was done in error. So she may be able to bring that up in immigration court. I just don't know if that's the case. Well, can we get an answer to that from the government as to whether an I-130 or, I mean? Sure. I mean, as far as you're relying on that, I don't know if you are. If your position is it just doesn't matter, we win anyway. But it would be good to know if she could actually file an I-130 after the TPS proceeding at which the alien wins. May I also? I'm glad to have you say yes. But may I also suggest that if that's the situation that she does have a later opportunity to raise the claim, it may not be in your opponent's interest to press forward with this litigation right now. And so I think you've got incentives to be talking to each other before you come back with a letter to the court answering the questions. If I understand the timing of it, the removal hearing is in May? Yes. And if I understand it, the TPS status for people from Sudan at least stays in place until November? That's my understanding, Your Honor. So there's a fairly good chance that you could – I don't know how fast these things go, but there's a chance that we would have an immigration ruling that there was no marriage fraud while TPS status was in place and that that ruling would come after a full-blown evidentiary hearing. Alternatively, if it's rejected after that full-blown hearing, that would suggest the procedural rights that are being claimed as necessary wouldn't make a difference. That's true, Judge. And it's sort of – because my background is in the criminal context, it would be a harmless error argument. And that's because I do think that Kerry v. Dinn is dispositive in this case. And if you don't want to rely on Kerry v. Dinn, you can rely on the Supreme Court's case in Mandel in 1972. In that case, professors wanted to bring an individual into the country. But this is an individual who's in the country. That's right, Judge. But the distinction is not – the distinction is that if you're out of the country, the process due is much less. If you're in the country, you may well get more process. And that's exactly what happened here. Well, but the question is then how much more process do you get under the Constitution? And the claim is if the only reason you're going to separate a citizen from a non-citizen with respect to their marriage is because of alleged marriage fraud, you need more. I mean, that's their argument. What's wrong with that? Well, I don't think you need more, Judge. In this case, you don't because the record is clear as a district court found. Not only did Mr. Ali have prior fraud in the diversity visa, he was paying his ex-wife to enter the country, to be able to remain in the country. He lied about where they were living. Is that the 2008 interview? It is, Judge. Is that in the record, the account of the interview? I know there's a representation about what the interview is. I can't seem to find it. Well, it's interesting because I think what the district court was referring to was that he indicated in 2008 he was primarily living in New Hampshire and his wife was living in Massachusetts. Well, I thought that the representation in the district court was that there was something in the record showing that he said in 2008 that they lived apart for the duration of their marriage. No, no, no. He said in 2008 that in 2008 he was living in New Hampshire and she was living in Massachusetts. And in fact, that proved to be true because she was still getting welfare benefits in Massachusetts. And they never ended. They started in 1985 and they remained through 1999. I think what's also incredibly important here is the fact that when he rented a residence in New Hampshire, you know that a landlord is going to check on your prior places you lived. He provided an address in Jamaica Plains. Yet, in his affidavit in support of the I-130 and attempting to get a more procedural due process. Can I just say, this is the quote from the administrative record that the district court quotes. Ali admitted during an interview, that's the 2008 interview with immigration officials, that Lewis primarily lived in Massachusetts and he primarily lived in New Hampshire during the duration of their marriage. That's the quote. That's from 1993-1998. On its face, that can't be true, right? See, Judge, I don't think that that's true. Right, but that's what the record shows and we don't have the underlying transcript. That's what the district court relied on. That's what's giving me concern. That just cannot be true on the face of the documents that we otherwise have. That's true, but that's not the only thing the district court relied on. I think you're right, Your Honor. And I saw the same thing. I think what the district court was referring to was He's quoting the administrative record. It's in quotes. So whatever he's referring to is what the agency represents, which is plainly wrong. That's correct. But, and I would say Well, doesn't that seem, I mean, I don't know if that maybe is just a substantial evidence point and that's not being challenged, so that's waived or No, but I think you take that out of the equation. I think if you take it out, you still have much more than you need, Judge. So assuming the district court So what is that more? The more is the prior DBS petition, the more is the wife being paid $1,000, the more is the false advocacy But she recants. She does, but So what tips the balance between the recantation and the initial statement? I think it has to be a wash, Judge. And I think you have to look to the other facts. Would you get to those, please? I'm sorry, Judge? Get to the other facts. Oh, okay, Judge. Inconsistency and affidavits. What are the inconsistencies? They were that the Social Security check did not reveal any addresses that he put in his affidavit claiming where he lived with his wife. The other facts were Was that relied on by the agency? Or do you think that doesn't matter whether the agency relied on that? Because the district court makes a point of saying the agency didn't rely on that fact. Well, that's true, Judge. I think the agency didn't. And I do think it matters, but I think So what did the agency rely on that would tip the balance beyond the 2008 interview statement, which seems not just the fact that she got benefits? Yes. Got welfare benefits in Massachusetts. Never came to New Hampshire purportedly to live. The difference in addresses. He lived in Mass. She lived in New Hampshire. And that's essentially it, Judge. But I would argue that that's enough. Had he asserted that she had ever lived in New Hampshire with him? Well, Judge, he claimed that her name was on the lease. And that, in fact, was true. However, there were sufficient facts to rebut that. Such as receiving welfare. Such as Is it inconsistent with her getting welfare benefits in Massachusetts and her moving for a period of time to live with him in New Hampshire? No, but in addition, when a Social Security check was run on her, none of the addresses under her name came up in New Hampshire. So that's important. Does it matter if you have welfare in Massachusetts and move to New Hampshire and you don't transfer your benefits? Not in and of itself. But it does matter when you look at the other facts. I thought her mother had put in an affidavit Yes. that said she, in fact, had lived with him in New Hampshire during a period that was contradicted by the Massachusetts welfare records. That's correct, Judge. I thought you said it wouldn't be necessarily inconsistent for her to be getting welfare in Massachusetts and to live for a period of time in New Hampshire if we're talking about months. Well, Judge, I think you are I interpreted your question as, is there something wrong with someone having welfare benefits and moving to New Hampshire right now and not having those benefits transferred? If you're supposedly living in New Hampshire for a period of time, you cannot claim benefits in Massachusetts. But if you're in New Hampshire for a few days, in and of itself, there's nothing wrong with that. But that wasn't the case here. It wasn't the case. And the fact is that you could also look at He, when he was supposed to be interviewed with her, indicated that they were separated. After that, there was another interview. He indicated again, we can't make that interview. The third time, even though they're told each and every time, you can't be interviewed unless you have your spouse's identification to prove it's her. The third time they came for the interview, they were turned away because she had no identification document. So if you take each of these facts individually and look at them, they look innocent enough. They can be explained away. But when you look at the entire picture, it's all indicative of fraud. Well, except for the fact that she says that she never said the first statement and that she married him intentionally. That's correct, Judge. But I think that with respect to her, there's so much impeachment that a district court may well disregard her entirely. One last question on the due process question of whether an evidentiary hearing would even be any help here. Under the regs, those impeaching documents about the Social Security benefits she received and the like, does the applicant for the I-130 have a mechanism for once they receive those, so they can test the NOID? Yes. Then they hear back from the agency, well, you're rejected, and the reason you're rejected is because we have this impeaching information that you didn't know about, we didn't tell you about. Is there any mechanism under the regs to say, well, wait a second, if that's what you're going to rely on, I'd like to respond to those? I don't know the answer, Judge. I would assume so. But please, if you're going to send us a letter, include the answer to that. Sure. Because there is a notable silence on the part of the petitioners. They do not say, give us a chance to put in additional evidence. They do not say to the agency, we are entitled to or we want an evidentiary hearing. Indeed, the only thing that I think they are now arguing is they would like the opportunity to cross-examine whatever the INS investigator was about an interview with the first wife that took place 17 years ago. I think that's what their due process case comes down to. Cross-examining Lewis and cross-examining the agent. And I would submit that... But Lewis is their own witness at this point. They can submit supplemental affidavits, but they make no effort to do so. That's correct, Judge. Am I right? They had access to the agent's name? Yes, Judge. Yes. Thanks. Thank you. Okay. Thank you, Your Honor. With regard to that last point concerning the access to the immigration investigator's name, that's not correct. There has been no... I have the name. You do, because you saw... Did I see something that you wouldn't have seen? You saw the record in its entirety. But none of that information, none of the record evidence was disclosed to Isra San. Did you ask for the name? I don't know if you were the... I was not in this case at that point, Your Honor. There was no request for the name in the administrative record of the case, correct? I don't believe so, Your Honor. But there was also no disclosure of the circumstances of this interview that happened, and nothing to suggest that the circumstances of that interview were involuntary. If I can just get to... Then why do you need the hearing to cross-examine the agent? Well, they didn't know about the... They did. At the point where they submitted the annoyed rebuttal evidence. Does Lewis deny that she met with an agent or just say, no, I didn't? She would know whether she had met with the agent or not. She also knows that she's received state welfare benefits for close to a decade at one address. Lewis is presented as your witness. Yes, Your Honor, but I think that because the reliability, because the weighing of evidence was a 1999 statement and a 2008 statement from the state witness, and the Immigration Service was the arbiter of which of that statement was more credible, I think they had an obligation to provide Israel with all the circumstances concerning the interview that happened in 1999, including the Immigration Service's own inclusive determination at that time as to marriage fraud. In 1999, they did not find conclusive evidence of marriage fraud. The records show that... No, they had no reason to. She had withdrawn the application, or she was about to withdraw the application. Yes, but she also supposedly made exculpatory statements that implicated a marriage fraud conspiracy. She did. Of course, Kamal did not, but she did. And those statements were then cherry-picked out of the record by Immigration in 2008, presented as substantial and conclusive evidence of marriage fraud. I just think that is the Immigration Service... You know, it's sort of odd. Your witness knows everything that you're saying you were denied access to. Certainly, if she was there in an evidentiary hearing and those facts were developed in real time, then Israel, as I would know... You submitted an affidavit from her to convince the agency that they didn't want to find there was marriage fraud. And the affidavit denies that she made the statement about money, but says almost nothing else about all of the other things that were, in some sense, material to the decision. I don't know what other evidence was material to the decision, because all the evidence that the Immigration Service provided... The welfare benefits. The statement from her mother that the welfare benefits tend to contradict. But the welfare benefits weren't disclosed. That was not disclosed in that affidavit. She is the recipient of the welfare benefits. Another way to think about it is, if you want now an evidentiary hearing, right, as a matter of procedural due process, so the question is, what proffer are you making to us that an evidentiary hearing would be of use? Because the question is, okay, so yes, you get an evidentiary hearing, and the reason you want to do that is because that way we can get to hear from Lewis about all these points. But the point is we don't need the evidentiary hearing for that. We could get an affidavit, but you haven't supplied the affidavit. Or alternatively, you have an evidentiary hearing so you could cross-examine the person that interviewed her 17 years ago. But what proffer has been made to us that you're going to find that guy, that he's going to say anything of use to it? So in other words, normally when you seek an evidentiary hearing, there has to be a sufficient threshold showing. What hasn't been here? But the proffer was not made to the district court, and the district court specifically finds that you haven't met your due process burden of showing prejudice. Well, that gets to the rule proceedings and whether there was a threat of imminent removal when we talk about prejudice. No, no. No, the denial of the hearing is the prejudicial thing, and you haven't shown. The question to you is how have you shown that the denial of the hearing is prejudicial? Not because therefore there would be removal, but because the hearing would be of any use. In other words, couldn't you make all the showings you need now? I think you could knock out any adverse implication from Priscilla's 1999 statement with an evidentiary hearing, and if that could be accomplished, then you would have no evidence that the beginning of this marriage was fraudulent, because the standard for a marriage fraud is the fraud at the inception of the marriage in 1993, not when the couple separated in 1997 or 1998. Okay. We've spent a great deal of time on this case, much more than was allocated. We have suggested some areas where the court would like to have, if we could, a letter from both counsel, and we will actually probably wait on that letter, which may make some difference to the outcome, and it seems to me both sides have some incentives here. All right? Okay, Your Honor. Thank you.